JUDGE LINDSAY
delivered the opinion op the court.
In 1866 a band of armed men threw a train from the track of the Louisville & Nashville Railroad and robbed and otherwise maltreated the passengers. The railroad company offered a reward for the apprehension and conviction of the persous engaged in the outrage. The substance of the offer was “ that the company would pay to the captors one thousand dollars for the capture and conviction of each of said parties for said offense, or the company would pay ten thousand dollars for the capture and conviction of all of said offenders.”
These appellees, in company with other persons who are made parties defendant to this action, accepted and acted upon the offer of the company, and pursued, captured, and delivered to the proper civil authorities Stephen Cornwell and John Evans, both of whom, it is conceded, were engaged in the attack upon the train and in the robbery of the passengers.
In their petition appellees aver not only the facts necessary to establish the guilt of Cornwell and Evans, but state that they each in open court repeatedly confessed their guilt. They further charge that they were both regularly indicted, and were present in court when the prosecutions against them stood for trial; and that the company, through certain of its attorneys who were employed to assist in the prosecution of the persons arrested on the charges of attacking theArain and robbing the passengers, procured the attorney of the’-commonwealth to move therefor and the circuij^burt to dismiss the indictments pending ...against Cornwell and Evans; and they *554 charge that this was done with the fraudulent intent and purpose of evading the payment to the captors_jof the rewards offered for their arrest and conviction.
The company denies all charges of fraud or bad faith in this regard. It also denies that it procured the dismissal of the two indictments, or that its attorneys procured their dismissal, and denies that its attorneys had authority to act for it in procuring the indictments to be dismissed and the prosecutions against Cornwell and Evans to be abandoned.
There is no evidence tending to establish bad faith on the part of the comj>any or its attorneys; but we may here observe that, inasmuch as it was not necessary that appellees should charge and prove bad faith, the failure of the appellees to establish this immaterial averment does not militate against their right to recover.
If the conviction of the persons named was a condition precedent, it was a condition not to be performed by the parties who made the arrests; and if the happening of the event upon which their right to the reward depended was hindered or prevented by the act of the company, suqJj. hinderance was in law equivalent to the completion of the condition precedent, and the railroad company is liable on its contract to pay the rewards, although it may have acted in the matter with the utmost good faith.
It is manifest from the record that Cornwell and Evans were both guilty, and that they would both have been convicted if they had been put upon trial. It is in proof that several persons who had been arrested and indicted were tried and convicted, and that there were others who had forfeited their bail-bonds by failing to appear for trial. Evans and Cornwell had been used by the commonwealth as witnesses against those who had beeii tried and convicted, and as hopes were entertained that those who were still at large would ultimately be recaptured and brought to trial, the. counsel employed by *555 the company regarded it important that they (Cornwell and Evans) should not be rendered infamous J?y being convicted of felonies, but that their competency as witnesses should be preserved.
One of the attorneys testifies that at the time or term at which the indictments against these two parties were dismissed three of the parties charged with participating in the attack upon the train and the robberies attending the attack were at large; that they were “ regarded equally if not more guilty than any others of the party; ” and that they (the attorneys employed by the company) thought it expedient and proper not to try Cornwell and Evans, “ but to endeavor to have the indictments against them dismissed, that they might be used in the prosecution of the fugitives should they again be captured.” He says further, “We held a private consultation on the subject, and after arriving at the above conclusion we called W. B. Thompson, acting commonwealth’s attorney in these cases, into our consultation, and importuned him to consent to their dismissal for the reason above given.” The same witness also states that, in his opinion, the motions to dismiss would not have been made except for the suggestions and importunities of the company’s counsel.
It may be assumed, as an established fact that the dismissal of the indictments against Cornwell and Evans was the direct and immediate consequence of the action of the company’s attorneys. Such being the case, the question arises whether under their employment they acted within the scope of their powers and duties as attorneys and officers of the court in counseling, advising, and procuring these indictments to be dismissed.
It appears from the answer of the company that its attorneys were employed to prosecute, or to assist the attorney for the commonwealth in prosecuting, all the offenders who had been captured. The employment by private persons of *556 counsel to assist in the prosecution of parties charged with crime is tolerated upon the idea that counsel so employed will in good faith represent the commonwealth. For the time being they are recognized by the court as its representatives, and are bound by their obligations as attorneys and officers of the court to labor honestly and earnestly to secure the conviction of the guilty; but they are also bound to respect the rights of the commonwealth, and to act in accordance with their convictions as to the propriety and policy of prosecuting or dismissing an indictment. We must presume that the company, when it employed counsel to assist in the prosecution of the parties charged with being guilty of the attack upon its train, and of- the robbery of its passengers, expected and intended that they should honestly and faithfully discharge the duties incident to the position in which they were placed by their employment. To the extent that they did so discharge the duties growing out of and necessarily incident to their employment they represented as well the railroad company as the commonwealth, and the company is bound by their acts.
We must further presume that the public interest’was sub-served by the dismission of the indictment against Cornwell and Evans, or at least those representing the commonwealth, and the company in good faith believed that it was important to preserve their competency as witnesses in order that greater criminals might be brought to punishment.
The motions to dismiss were certainly made in good faith • and as they met with the approval and sanction of the court in which all the indictments were pending, and which was conversant with the facts attending tli£ commission of the outrages upon the railroad and its passengers, they must be regarded and treated as expedient and_proper.
It seems to us therefore that it necessarily results that in advising and procuring the dismission of the indictments the *557 attorneys of the company acted within the scope of their authority and in the discharge of a duty devolved upon them by the very nature of their employment, and hence it follows that they acted for and on behalf of the company. Such being the case, the company through its attorneys hindered and prevented the conviction of Cornwell and Evans, and it can not escape the payment of the reward offered, upon the ground that they yet remain unconvieted.
The judgments rendered by the court below in the two causes of Goodnight, &c. v. The Railroad Company and of Crowdus, &c., against the same defendant conform to our views of the law, and they are therefore affirmed.
Judge Coker does not concur in this opinion.