17909.    MCCRARY v. NASHVILLE, CHATTANOOGA AND SAINT
                    LOUIS RAILWAY.

1.   In a suit against a railway company to recover a reward offered by the
defendant for information resulting in the conviction of any person of
a certain crime, where there is no allegation rendering proof of con-
viction unnecessary, the petition should show not only that the plain-
tiff has furnished to the defendant information touching another's guilt
of the offense named, but also that such information has resulted in the
conviction of such person.
2.   The judgment of a juvenile court committing a child under the age of
sixteen years to the Georgia Training School for Boys is an adjudica-

Infants, 31 C. J. p. 1112, n. 6 New.
Rewards, 34 Cyc. p. 1756, n. 82.

tion only that the child is a delinquent, and is not a conviction of an offense.

3. In a case of this sort, where the person apprehended was a child twelve years of age, the failure of the plaintiff to show conviction of the alleged offender can not be relieved by averments to the effect that such conviction was prevented by the act of the defendant in causing the child to be brought before a juvenile court and committed to the Georgia Training School for Boys, even though it appear that the defendant was actuated by an intention to defeat such conviction and thereby to escape liability for the reward. This is so for the reason that it can not be inferred that the child would have been convicted had the defendant not interfered.

4. Neither count of the petition set forth a cause of action, and the court properly sustained the general demurrers.

DECIDED JANUARY 16, 1928.

Complaint; from Bartow superior court—Judge Tarver. October 28, 1926.

M. S. McCrary brought suit in two counts against Nashville, Chattanooga & St. Louis Railway, to recover $5,000 as a reward which the petition alleged was due him because of his having accepted and complied with the terms of a public offer made by the defendant to pay that sum "for information resulting in the conviction of any one for the crime of wilfully dynamiting, tampering with, injuring, or obstructing its tracks, bridges, tunnels, or other portions of its roadway in such manner as to endanger the operation of trains." The first count of the petition proceeded upon the theory that the plaintiff, relying upon this offer, had obtained information of the guilt of a certain person, to wit, a negro boy twelve years of age, named Willie Smith, of wilfully interfering with a switch connected with the defendant's railroad, and that this information had been furnished by the plaintiff to the railroad company and had resulted in the conviction of the offender. The conviction claimed was an order of the juvenile court of Bartow county, committing the accused to the Georgia Training School for Boys. The second count alleged the same facts as the first, but undertook to show further that, even if the information furnished by the plaintiff had not resulted in a conviction (that is, if the commitment by the juvenile court did not amount to such), the lack of a conviction was not attributable to any fault of the plaintiff, but that the defendant by its own intentional act had prevented a conviction. On this point it was averred that after the plaintiff had discovered the boy's guilt and had procured

his incarceration, the defendant, through its officers and agents, caused the prisoner to be brought before the juvenile court and committed to the training school, all for the purpose of preventing his conviction in a court of competent jurisdiction, and thus of defeating the plaintiff's demand; that except for this interference by the defendant the plaintiff could and would have procured such conviction, against which "no legal reasons existed;" and that since the defendant intentionally frustrated the plaintiff's efforts, it is liable for the reward just as though the offender had been tried and found guilty in a court of competent jurisdiction to try him for the offense. No other proceedings against Willie Smith are shown in either count of the petition.

As appears in each count, the information which the plaintiff obtained and furnished to the defendant touching the guilt of Willie Smith was that on a certain occasion when one of the defendant's trains had left the main track and had gone into a siding under circumstances indicating that it was not the purpose of the enginemen to run the train into such siding, the plaintiff immediately got into his automobile and drove to a point near which the train had been diverted and proceeded "to hunt the trouble and to hunt for the culprit who was tampering with the tracks and switch and causing the trouble in the operation of the defendant's trains." The plaintiff thereupon discovered the negro boy, Willie Smith, hiding near the track and "not far from the switch that had been tampered with." The plaintiff arrested him and carried him to the officers of the defendant, and he was afterwards delivered to the sheriff. He then confessed to having tampered with the switch, stating that he had broken the lock thereon, and showing the instrument with which he had done it. He explained his motive as a desire to board the train and steal a ride. All of these things were made known by the plaintiff to officers of the railway, with the view of earning and claiming the reward. Each count of the petition contained the following allegations:

"9. Plaintiff shows that the turning of the switch as aforesaid was on the State Road just a few miles south of Cartersville; that said line of railroad and the two trains which came so near to being wrecked as aforesaid were being operated by this defendant under the name and style of the Western & Atlantic Railroad, but that said railroad and said trains were being operated by this de-

fendant, that the trains are the property of this defendant, and the line of railroad is leased by the defendant, and the defendant is operating same as lessee; that all its stationery, tickets, literature, contracts, bills of lading, and all written or printed matter of every kind and character, are made and printed in the name of this defendant herein, and that the passenger-trains have the name of this defendant printed thereon in large letters. Plaintiff alleges that said offer of reward was posted along the line known as the State Road just as it was along the other lines owned and operated by the defendant, that although this particular part of the track and the particular trains in question were operated by the Western & Atlantic Railroad, a subsidiary of the defendant, the protection of said track and said trains was the protection of this defendant, and that the same was to the great benefit and advantage of said defendant.

"10. Plaintiff alleges that the defendant herein operates and controls the railroad and the trains hereinbefore referred to; that the offer of reward made as aforesaid was intended to include and did include, and plaintiff and the public was led by the acts of the defendant as aforesaid to believe that it did include, the said line of railroad and all trains running thereon; that the defendant got the benefit of the services of the plaintiff herein, and that the defendant is liable to pay for the same, and can not be heard to say that it did not get the benefit of said services, or set up any contention that said offer of reward did not apply to subject-matter of this suit."

The court below sustained the defendant's general and special demurrers and dismissed the suit, and the plaintiff excepted.

*Joseph M. Lang,* for plaintiff.

*Neel & Neel, Tye, Peeples & Tye,* for defendant.

BELL, J. 1. The plaintiff brought a prior action against the Western & Atlantic Railroad, and a judgment sustaining a general demurrer to that suit was affirmed by this court. *McCrary* v. *Western & Atlantic Railroad,* 35 *Ga. App.* 641 (134 S. E. 347). The defendant in that case had offered no reward, and was, of course, not bound by the offer of the Nashville, Chattanooga & St. Louis Railway. A person offering a reward may prescribe whatever terms he sees fit, and these terms must be substantially complied with before any contract arises between him and another who

43

claims the reward. The offer of the reward in this case was for information resulting in conviction, and, unless there be something to render allegation and proof of a conviction unnecessary in the particular case, the plaintiff can not recover without showing that he furnished to the defendant information touching the guilt of some person of the crime mentioned, and also that the information resulted in his conviction. Williams v. W. C. Ry. Co., 191 Ill. 610 (61 N. E. 456, 85 Am. St. R. 278). In the first count of the petition the plaintiff proceeds on the theory that the culprit was duly convicted, and hence gives no reason for a failure to convict. This count is bad because the proceeding before the juvenile court was not a trial for an offense, and the commitment by that court did not amount to a conviction. The only adjudication was that the child was a delinquent. See *Williams* v. *Davidson,* 147 *Ga.* 491 (94 S. E. 564). The defendant's offer clearly contemplated a conviction on a prosecution for the offense, in a court of competent jurisdiction (see Penal Code (1910), §§ 513, 522) ; and such a conviction could not be had in a juvenile court. Section 12 of the act of August 16, 1915, as amended August 19, 1916 (Ga. L. 1915, p. 34; Ga. L. 1916, p. 58; 11 Park's Supp. 1922, § 900 (1) ; Michie's Code, § 900 (12)), providing for the establishment of juvenile courts, expressly declares that "No adjudication under the provisions of this act shall operate as a disqualification of the child for any office, State or municipal, and such child shall not be denominated a criminal by reason of such adjudication, nor shall such adjudication be denominated a conviction." Counsel for the plaintiff in error suggests that the legislature intended by this section merely to prevent the child's loss of the privileges of citizenship or to protect his good name, and that this was the only purpose of the language used. Regardless of other things which the legislature may have had in mind, we think the main object of this section was to so limit the jurisdiction of the juvenile court that it might not infringe upon the jurisdiction of the superior court and thus endanger the constitutionality of the act creating the former court. See *Law* v. *McCord,* 143 ·*Ga.* 822 (85 S. E. 1025) ; *Hicks* v. *State,* 146 *Ga.* 706 (92 S. E. 216) ; *Williams* v. *Davidson,* supra.

The plaintiff would not be entitled to claim the reward in this case merely by proof that he had furnished information resulting

in an adjudication that the person apprehended by him was a delinquent child. Even though this adjudication may have served to identify the child as having committed an act specified in the defendant's offer, the purpose of the railroad company in offering the reward was not simply to identify the perpetrator of the act, but to find and punish him as a criminal. The suit being predicated on an alleged contract, it is necessary to ascertain the intention of the railroad company as expressed in the offer which the plaintiff claims to have accepted and complied with. The company's offer was to pay "for information resulting in the conviction of any one for the crime" specified. Even the amount of the offer, in the large sum of $5,000, would tend to show that the mere identification of one as having tampered or interfered with the defendant's property was not the thing desired. From all the language used, it is evident that the company was not seeking to satisfy a simple curiosity, but was desirous of bringing punishment upon the guilty party at the hands of the law, one of the purposes being to deter others from similar deeds and thus to add to the security of its property and to the safety of those who might operate or travel upon its trains. We conclude, therefore, that the first count of the petition failed to set forth a cause of action.

2. The defects inherent in the first count were not excluded from the second count by the allegations purporting to show that the conviction was prevented by the act of the defendant. The suspect was a mere child of the tender age of twelve years, and a person of this age can not be convicted of a crime or misdemeanor unless it appears from the evidence that he was capable of crime, and the burden of proving this fact rests upon the State. *Brown* v. *State*, 12 *Ga. App.* 722 (78 S. E. 352); *Mallard* v. *State*, 28 *Ga. App.* 570 (112 S. E. 296). It is our opinion that the petition did not set forth such facts as would render a conviction probable, and it is the merest speculation to say that the jury would have found the prisoner guilty had he been tried in a court having jurisdiction to adjudicate that issue. In the case of *Stephens* v. *Fulford*, 153 *Ga.* 637 (112 S. E. 894), an attorney was employed to procure a pardon for a person who had been sentenced to and was confined in the penitentiary. The attorney's fee was contingent on securing the pardon. While the application was pending before the Governor, with a favorable recommendation by the prison com-

mission, the convict escaped, and his father, who had engaged the attorney's services on the terms stated, having full knowledge of such escape and of his son's whereabouts, and having the power to return him to the proper custody, refused to do so or to "let the penitentiary authorities know the whereabouts of his son," or to assist in restoring him. The Supreme Court, on questions certified by the Court of Appeals, held: "An attorney at law can not recover the whole or any part of a contingent fee upon an express contract of employment, where the contingency provided for by the contract has not been brought about, although the entire work or service of the attorney has been duly performed, and although the possibility of the contingency being brought about is prevented by the subsequent wrongful conduct of the person for whose benefit the services were engaged, and with the subsequent continuing passive acquiescence of the client. Whether the undertaking would have proceeded to a successful or unsuccessful final determination had the client not passively acquiesced in the wrongful conduct is necessarily merely conjectural, and could not be considered in determining the question of liability." Counsel for the defendant cite the case of L. & N. R. Co. v. Goodnight, 73 Ky. 552 (19 Am. R. 80), in which the Supreme Court of Kentucky, on facts similar to those now before us, with the exception of the ages and the capacity of the persons apprehended, reached the conclusion that the reward could be collected; but being of the opinion that the above decision by our own Supreme Court is directly applicable, we deem it unnecessary to comment on the Kentucky case.

There is no similarity between the present case and those cases in which it has been held that one who has been employed to consummate a sale of real estate is not to be denied compensation for his services where it appears that he has done all that he was required to do under the contract, and the sale was prevented by the refusal or interference of the owner. In that class of cases it is at least necessary that the agent bind a purchaser. Certainly a jury would not have been bound to convict the accused under the facts set forth in the petition in this case. It not even appearing that the alleged offender would probably have been convicted had the defendant not interfered, it can not be said that his conviction was prevented by the act of the defendant. Furthermore, if the person alleged to have been discovered by the plaintiff is in fact

guilty of the crime specified, may he not yet be subject to trial and conviction in the superior court, should the grand jury see fit to indict him and should the officers of that court deem it proper to try him; and has the same not been true all the while since the moment of his arrest? *Hicks* v. *State,* and *Williams* v. *Davidson,* supra. If so, how can it be said that his conviction was prevented by the defendant?

In our view of the case, it is unnecessary to determine whether the offer of reward as made by the railroad company contemplated the line of road on which the switch was turned. Each count of the petition failed to set forth a cause of action, and the general demurrers were properly sustained.

*Judgment affirmed. Jenkins, P. J., concurs.*

STEPHENS, J., dissenting. The word "conviction," as used in the offer of a reward, does not necessarily bear the same construction as where used in the juvenile-court act. As used in the defendant's offer, it should be given a non-technical construction. The offer of a reward should be construed with due regard to the evil sought to be obviated by the railroad. The railroad was necessarily seeking, in the interest of the safe operation of its train, the prevention of the criminal acts referred to, by the capture and punishment of any one guilty of such acts. It would seem that the trial of one in the juvenile court, and the adjudication of his guilt of any of the acts designated in the offer of a reward, and his commitment to the juvenile reformatory would have a deterrent effect upon the commission of such acts as contemplated by the defendant. I therefore am of the opinion that the trial of the boy in the juvenile court and his commitment to the State reformatory for the "offense of attempted train-wrecking" is a conviction in the sense in which this word is used in the defendant's offer. And being of the further opinion that, under the facts alleged in the petition, the defendant's offer of a reward applied to the Western and Atlantic Railroad in Bartow county, I am of the opinion that the petition in the first count set out a cause of action, and that it was error to strike the plaintiff's petition in its entirety. I can not concur in the judgment of affirmance.