**INVESTORS SYNDICATE LIFE INSURANCE AND ANNUITY COMPANY, Appellant,**

v.

**Loy F. SLAYTON, Appellee.**

Court of Appeals of Kentucky.

June 14, 1968.

Faurest & Collier, Elizabethtown, for appellant.

D. H. Robinson, Louisville, for appellee.

CULLEN, Commissioner.

John Slayton made application for a life insurance policy ($4,500) with an agent of Investors Syndicate Life Insurance and Annuity Company. The agent issued a "Conditional Receipt" which made the insurance immediately effective (subject to certain conditions as to the effect of which there is a dispute) and mailed the application to the home office. This was on June 1, 1963. On June 3 the application arrived at the home office and on the same day Slayton was killed in an airplane crash. Upon investigation the company discovered that Slayton had answered falsely certain questions in the application and that only 18 months previously he had been hospitalized and administered rigorous measures, including shock treatments, for a nervous disorder. Accordingly the company declined to issue the policy and tendered back the advanced premium. The beneficiary named in the application, appellee Loy F. Slayton, refused the tender and brought suit to recover the insurance benefit. The case was tried before a jury on the issue of whether the false statements in the application were material. The jury found for the plaintiff and judgment was entered accordingly, from which the company has appealed.

The appellant company maintains that as a matter of law the false answers in the application for insurance were material, wherefore, under KRS 304.656, it was entitled to avoid the policy. It also maintains, in the alternative, that under the provisions of the "Conditional Receipt" no contract of insurance ever came into existence. Therefore, the company argues, its motions for a directed verdict and for judgment n. o. v. should have been sustained.

In September and October 1961 John Slayton was hospitalized for a nervous disorder and was given numerous electric shock treatments in addition to sub-shock insulin treatments and psychotherapy. A little over a year later, in December 1962, he made application to the Commonwealth Life Insurance Company for life insurance. In the application he truthfully reported his illness and treatment. The company obtained a report from his doctor and then declined to insure him. Six months later, in June 1963, Slayton made the application here in question, to the appellant company (Investors Syndicate). He answered "No" to the following questions:

"9. Has your application for insurance to this or any other insurance company ever been declined, postponed or modified as to amount, plan or premiums? If "Yes" give date, reason and the name of the company in Item # 14 below.

\* &ast; &ast; &ast; &ast; &ast;

12. Has Proposed Insured had any illness, injury or operation within the past five years which has:
A. Caused him to consult any physician or other practitioner? (Including physical exams),

\* &ast; &ast; &ast; &ast; &ast;

B. Confined him to a hospital, sanitarium, or clinic?

\* &ast; &ast; &ast; &ast; &ast;

13. Have you ever been treated for, or had any known indication of any disease or disorder of:

\* &ast; &ast; &ast; &ast; &ast;

C. Brain or nervous system?"

Admittedly the answers were false.

On receipt of the application at the home office the company commenced a routine

processing of the application. This included preparation of a policy. It also included the making of a request of the Medical Information Bureau (a national organization which keeps records of life insurance company applications and rejections) for a search of its records as to Slayton. The M.I.B. reported that their search showed a record of previous medical treatment of Slayton for psychoneurosis. The company then made inquiry of Slayton's doctors (with consent of his father) and learned the full history of the illness and treatment. The company then declined to issue the policy. On the trial the chief underwriter testified that the insurance coverage was rejected because the medical investigation disclosed that Slayton was not insurable on the day of the application, and that the fact that there were false representations in the application was not the basis of the decision to reject the insurance coverage.

The parties have pitched their battle in the briefs mainly on the issue of whether the misrepresentations in the application were material as a matter of law, so as to entitle the company to *void the contract of insurance*. As we view the case that question is not of controlling significance. Rather, the controlling question is whether any contract of insurance ever came into existence.

It is to be remembered that the death occurred before the company had taken any action on the application. So if Slayton was insured when he died it was because of the "Conditional Receipt," which was the only basis of obligation of the company at the time of death. See Couch on Insurance 2d, secs. 7.1 to 7.15, pp. 308 to 325.

The "Conditional Receipt" was as follows:

"The insurance shall be effective as of the date of this receipt or the date of completion of medical examination ordinarily required by company, whichever is later, if Company at its home office shall be satisfied that on said date the person or persons proposed for insurance were in good health and insurable on the plan applied for, and at the premium rates stated in the application. * * *"

This is one of several standard forms of "conditional receipts" or "binders." See 29 Am.Jur., Insurance, secs. 208 to 212, pp. 598 to 602. It is generally recognized by the courts of this country that this is a valid contractual provision; that it creates a contract of preliminary insurance with the reserved right in the insurer to determine in good faith the applicant's insurability; and that if the applicant is determined not to have been an insurable risk at the time of the application the company is not liable for a death that occurs during the period covered by the receipt. See Annotation, 2 A.L.R.2d 943 @ 986. We concur in that view.

In the instant case the company determined that Slayton was not insurable on the date of the application. Unless that decision was not made in good faith it is conclusive of the company's nonliability. In our opinion the record shows good faith beyond reasonable dispute. Commonwealth Life Insurance Company had refused to insure Slayton on the ground of his uninsurability. Underwriting manuals of several companies classed a person with Slayton's medical history as uninsurable. The *opinion* stated by several witnesses for the claimant here, that prudent and careful underwriters would not have rejected insurance for a person with Slayton's history, does not in our opinion tend to establish bad faith in the rejection by the appellant here, in view of the positive evidence that Commonwealth Life had rejected him and that other company's manuals classed a person with his history as uninsurable.

In our opinion the appellant was entitled to a directed verdict.

The judgment is reversed with directions to enter judgment dismissing the plaintiff's claim.

All concur except OSBORNE, J., who dissents on the ground that in his opinion the question of whether or not the company made the determination of noninsurability in good faith is one of fact for the jury. He would remand the case for retrial.