RYAN, J., delivered the opinion of the court, in which CLAY, J., joined.
DAUGHTREY, J. (pp. 410-417), delivered a separate dissenting opinion.
OPINION
RYAN, Circuit Judge.
This is a diversity action under Kentucky law in which the district court entered judgment in favor of the plaintiffs after a jury found that the defendant had reviewed the decedent’s life insurance application in bad faith. The defendant, Southern Farm Bureau Life Insurance Company, offers two reasons why we should reverse the judgment of the district court. It argues, first, that the district court erred as a matter of law in holding that a finding of bad faith on the part of the defendant, without more, is sufficient to support a verdict in favor of the plaintiffs; and second, that the plaintiffs failed to offer sufficient evidence from which a reasonable jury could have found that Southern Farm reviewed the decedent’s application in bad faith. Although the plaintiffs are generally of the opinion that the judgment of the district court should be affirmed, they raise two arguments on cross-appeal: (1) that the district court should have applied Kentucky law, rather than federal law, in computing post-judgment interest; and (2) that they were entitled to seek punitive damages. For the following reasons, the judgment of the district court will be affirmed in part and reversed in part.
I.
A.
The parties do not dispute the material facts of the case; instead, they dispute whether these facts are sufficient to show that the defendant acted in bad faith in reviewing the life insurance application submitted by the decedent, Kenneth Stewart Riddle.
On August 12, 1998, Riddle completed an application for life insurance, with the assistance of the defendant’s agent, Richie Estes. The application was for $200,000 in life insurance coverage. Riddle paid the first month’s premium, as calculated by Estes based on the health and medical information disclosed by Riddle, and was given a conditional receipt. This receipt contained certain conditions precedent to coverage, including the requirement that the defendant “be satisfied that each person proposed for insurance ... is a risk insurable by the Company under its rules, limits, and standards for the plan and the amount applied for.” The application was received at the defendant’s home office on August 18, 1998, and was given to an underwriter named Jeff Lewis.
On September 9, 1998, the defendant learned that Riddle had been killed in a motor vehicle accident. Sometime later, the defendant’s Regional Underwriting Manager, Bobbie Jo Myers, informed Lewis that Riddle was deceased; she then took over the Riddle file. The file was then reviewed “by Myers, by ... her boss, Chief Underwriter Danny Collins ..., and by his boss, Vice President of Underwriting Denny Blaylock.” The defendant claims that this procedure is always followed when the company learns of the death of an applicant during the under *403 writing process, but it could produce no written policy or other documentation to support this claim. The district court noted that although the defendant claimed that each of these persons “expressed grave concerns over the same medical conditions,” each, in fact, “had strikingly different underwriting ‘concerns.’ ” “As the review proceeded up the chain of command from Myers to Collins to Blaylock, the number of medical ‘concerns’ increased.” Strangely, the first concern Collins noted in the underwriting form about Riddle’s “medical problems” was: “1 month prem. paid.” Blaylock testified that “the fact that [Riddle] was deceased was not a factor in our action,” but he admitted that Riddle’s medical records had been scrutinized more closely than in the average case, and, at one point, he admitted that he went through the file with a “fine-tooth comb.”
On October 6,1998, the defendant sent a notice to Riddle’s children that their father was “uninsurable”; that coverage was denied; and that premium paid would be refunded. The notice informed the family that Riddle “was uninsurable when the application was completed” because “your father’s medical history ... includes rheumatoid arthritis, chronic obstructive lung disease with continued smoking, high blood pressure being treated by medication and other underwriting concerns.” The defendant did not disclose what these “other underwriting concerns” were, and the district court noted that such vague references could support an inference that the defendant was simply “attempt[ing] to avoid be[ing] pinned down to specific reasons for the denial.”
Despite the fact that underwriters Myers, Collins, and Blaylock had “strikingly different underwriting ‘concerns,’” the defendant’s investigation of Riddle’s file did reveal that Riddle suffered from a number of serious ailments. Furthermore, it would appear that Riddle was not entirely forthcoming in describing, in his life insurance application, either the severity or nature of his medical condition. Nevertheless, in denying the defendant’s motion for summary judgment, the district court noted that although the plaintiffs’ evidence of bad faith was circumstantial, there was “considerable additional evidence that suggests that the Defendant may have been looking for ways to avoid coverage.”
B.
The plaintiffs had initially filed suit in Adair Circuit Court in the Commonwealth of Kentucky, alleging that the “Defendant’s actions in finding that ... Riddle was not insurable at the time that the application was made, was [sic] not made in good faith.” They sought to recover the full value of the policy for which Riddle applied, with interest, as well as “punitive damages according to proof.” The case was then removed to the United States District Court for the Western District of Kentucky, on the basis of diversity.
The district court denied the parties’ cross-motions for summary judgment, and in an Order and Opinion issued on August 26, 2002, the court denied the defendant’s motion to bifurcate the trial and held that punitive damages were not available to the plaintiffs because theirs was a contract claim for which punitive damages are unavailable under Kentucky law. The case proceeded to trial by jury. The defendant moved for judgment as a matter of law at the end of the plaintiffs’ case-in-chief and again at the close of all evidence. The district court denied both motions, and a verdict was subsequently rendered in the plaintiffs’ favor for $200,000, the full amount of the insurance policy. Shortly thereafter, the district court granted the plaintiffs’ motion for pre-judgment and *404 post-judgment interest, but held that post-judgment interest was to be determined at the federal rate of interest, and not in accordance with Kentucky law.
The defendant appealed, challenging “the final Judgment entered in this action on the 7th day of November, 2002.” The plaintiffs also appealed, challenging “the Opinion and Order entered on the 26th day of August, 2002, the Final Judgment entered on the 7th day of November, 2002, and the Memorandum Opinion and Order entered on the 7th day of November, 2002.”
II.
A.
The defendant argues that the judgment of the district court must be reversed because it is based on an erroneous understanding of Kentucky law. We disagree.
1.
The district court instructed the jury as follows: “You will find for the Plaintiffs if you are satisfied from the evidence that the Defendant did not act in good faith in determining whether Mr. Riddle was insurable at the rate applied for; otherwise you will find for the Defendant.” The court stated that it would follow the rationale expressed in Rohde v. Massachusetts Mutual Life Insurance Co., 632 F.2d 667 (6th Cir.1980), where it was held that, under Ohio law, “if the insurer breaches the duty of good faith in undertaking the contractual obligation of determining insura-bility, a contract of insurance exists; and the question of insurability, had a good faith inquiry been made, is irrelevant.” The court found that there was “nothing novel in Rohde’s application of traditional contract law” and stated that “if the Kentucky Supreme Court were to address this issue, it would agree with that reasoning and apply it to cases brought pursuant to [Kentucky caselaw]” holding that insurers have a duty to determine an applicant’s insurability in good faith.
Southern Farm contends that the district court erred as a matter of law in applying the rationale of Rohde, because, it argues, under Kentucky law, a conditional receipt will be enforced according to its plain and unambiguous terms. If coverage under a conditional receipt is subject to a condition precedent, an applicant is bound by that condition, and courts may not rewrite the contract to eliminate this condition. Thus, as coverage under the conditional receipt was subject to the condition precedent that Riddle had to “be insurable under the company’s standards for the plan applied for,” and as the plaintiffs failed to prove that Riddle satisfied the condition precedent, Riddle was not covered by the conditional receipt, regardless of whether Southern Farm reviewed his application in bad faith.
2.
It is well-settled that we review questions of law de novo. Women’s Med. Prof'l Corp. v. Voinovich, 130 F.3d 187, 192 (6th Cir.1997).
3.
We reject the defendant’s argument because it is inconsistent with basic tenets of Kentucky contract law. Insurance policies are simply contracts between an insurer and an insured. See Haney v. Yates, 40 S.W.3d 352, 354 (Ky.2000); Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co., 983 S.W.2d 501, 504 (Ky. 1998); City of Louisville v. McDonald, 819 S.W.2d 319, 320 (Ky.Ct.App.1991). When, as here, federal jurisdiction is based upon diversity of citizenship, we must apply the law of the forum state. Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 *405 L.Ed. 1188 (1938); Stalbosky v. Belew, 205 F.3d 890, 893 (6th Cir.2000). The defendant argues, inter alia, that the district court erred in applying the rationale of Rohde because that case applied Ohio, rather than Kentucky, law. But as the district court pointed out, “there is nothing in Rohde beyond the application of traditional contract law.” As we shall explain, Kentucky law requires us to follow the same rule we followed in Rohde, and the district court did not err in applying that rationale.
Rohde involved a question of coverage under a conditional receipt. Rohde, 632 F.2d at 668. The defendant insurance company gave the plaintiffs husband a conditional receipt which
contained a promise by the defendant to insure the applicant under the policy sought, effective the latest date on which the applicant completed the application and physical examination. The receipt further stated that defendant had no obligation except to return payment unless the company determined that as of the completion of the physical and application the applicant was an acceptable risk under its “limits, rules, and standards.”

Id.

The applicant died the same day he applied for life insurance. Id. The defendant insurance company denied liability under the conditional receipt, claiming the applicant was uninsurable for the policy sought. Id. The applicant’s widow sued, claiming “that defendant’s bad faith determination that her husband was an unacceptable risk entitle[d] her, as beneficiary, to recover the full value of the insurance policy applied for by her husband.” Id.
The trial court found that the defendant acted in bad faith in denying liability under the conditional receipt. Id. at 670. Nevertheless, “the district court proceeded to determine what conclusion the defendant would have reached had it acted in good faith.” Id. The court determined that had the defendant acted in good faith, it would have found “that the applicant was unin-surable under the standard policy applied for.” Id. Accordingly, the district court concluded that the defendant was not liable.
Applying Ohio law, we reversed, holding that the district court’s “analysis fail[ed] to give defendant’s bad faith determination of the applicant’s uninsurability proper legal effect under Ohio law.” Id. We explained:
defendant’s good faith determination that the applicant meet the defendant’s standards of insurability was a condition precedent to defendant’s liability under the contract represented by the conditional receipt. When the defendant acted in bad faith and determined that the applicant failed to meet the defendant’s standards, then the defendant’s own act prevented the occurrence of the condition precedent. The nonoccurrence or nonperformance of a condition is excused where that failure of the condition is caused by the party against whom the condition operates to impose a duty. Defendant’s failure to honor its obligation of good faith in exercising its right to examine the application deprives defendant of any benefit it might obtain from that condition. The fact that the defendant might have found the applicant uninsurable had the defendant acted in good faith is not relevant under Ohio law.
Id. (internal citations omitted).
The same result obtains under Kentucky law, which holds that a conditional receipt
creates a contract of preliminary insurance with the reserved right in the insurer to determine in good faith the *406 applicant’s insurability; and that if the applicant is determined not to have been an insurable risk at the time of the application the company is not liable for a death that occurs during the period covered by the receipt.
Investors Syndicate Life Ins. & Annuity Co. v. Slayton, 429 S.W.2d 368, 370 (Ky.Ct.App.1968) (emphasis added). In Slayton, the Kentucky Court of Appeals held that the insurance company was entitled to a directed verdict because the record showed “good faith beyond reasonable dispute.” Id. The court followed the rule that unless an insurance company’s “decision was not made in good faith[,] it is conclusive of the company’s nonliability.” Id.
A direct corollary of this rule is that an insurance company’s decision to reject a claim is not conclusive when that “decision was not made in good faith.” Southern Farm concedes that if there is sufficient evidence to support the jury’s finding of bad faith, the company’s rejection of Riddle’s application is not conclusive. But, the company argues, that in order to recover under the policy, the plaintiffs were bound to show that the defendant would have found Riddle insurable had it acted in good faith. As the plaintiffs presented no evidence that could have established this fact, Southern Farm concludes that it cannot be liable under the conditional receipt.
We think this analysis fails to give the defendant’s bad faith rejection of Riddle’s application proper legal effect under Kentucky law. It is true, as the defendant points out, that under Kentucky law, conditions precedent are given full effect and may not be eliminated from insurance contracts by the courts. See, e.g., Slayton, 429 S.W.2d at 370; Northwestern Mut. Life Ins. Co. v. Neafus, 145 Ky. 563, 140 S.W. 1026, 1028-29 (1911). Furthermore, Kentucky courts have held that, “[i]n an action on an insurance policy, the insured must prove compliance with the policy’s conditions precedent or a waiver thereof to recover under its terms.” Am. Centennial Ins. Co. v. Wiser, 712 S.W.2d 345, 346 (Ky.Ct.App.1986). The defendants would rely on these principles alone while disregarding another important aspect of Kentucky law.
Southern Farm’s liability under the conditional receipt was subject to the condition precedent that the defendant had to “be satisfied that [Riddle] ... [wa]s a risk insurable by the Company under its rules, limits, and standards for the plan and the amount applied for.” But, under Kentucky law, the company was required to make a good faith determination whether Riddle met the Company’s standards of insurability. See Slayton, 429 S.W.2d at 370. Kentucky courts have long held that “if it be shown that the party obligated has prevented the creation of the conditions under which the payment would be due, without fault on the part of the other party, he is estopped to avail himself of a situation brought about by his own wrong.” Odem Realty Co. v. Dyer, 242 Ky. 58, 45 S.W.2d 838, 840 (Ct.App.1932). As early as 1809, the Kentucky Court of Appeals held that where the party obligated prevents the performance of a condition precedent, “the condition ought to be holden as performed.” Marshall v. Craig, 4 Ky. 379, 386 (1 Bibb 379), 1809 WL 745, at *3 (Ct.App.1809). Assuming for the moment that the defendant acted in bad faith in determining that Riddle did not meet the defendant’s insurability standards, then the defendant’s own act prevented the occurrence of the condition precedent. The nonoccurrence or nonperformance of a condition is excused where the failure of the condition is caused by the party against whom the condition operates to impose a duty. Almost two hundred years of Kentucky case law is unequivocal on this *407 point. See, e.g., Cowden Mfg. Co. v. Sys. Equip. Lessors, Inc., 608 S.W.2d 58, 61 (Ky.Ct.App.1980); Bryant v. Jones, 255 Ky. 606, 75 S.W.2d 34, 38 (CtApp.1934); Duckworth v. Routt, 242 Ky. 30, 45 S.W.2d 848, 849 (Ct.App.1932); Continental Ins. Co. v. Vallandingham & Gentry, 116 Ky. 287, 76 S.W. 22, 24 (Ct.App.1903); Louisville & N.R. Co. v. Goodnight, 73 Ky. 552, 554 (Ct.App.1874); Marshall, 4 Ky. at 386. If Southern Farm failed to honor its obligation of making a good faith determination whether Riddle was insurable under its standards for the plan applied for, the company is deprived of any benefit it might have received from that condition.
The defendant argues that in spite of the language of the conditional receipt and Kentucky law, which make coverage conditional on the defendant’s good faith determination that Riddle was “a risk insurable by the Company under its rules, limits, and standards for the plan and the amount applied for,” we should read Kentucky law and the contract as making liability under the conditional receipt dependant upon a good faith determination, whether by the defendant or the jury, that Riddle was, in fact, an insurable risk under the defendant’s rules, limits, and standards for the plan and the amount applied for. Implicit in this argument is the contention that Slayton stands for nothing more than the proposition that when an insurance company fails to make a coverage determination in good faith, the only consequence is that the company is subject to suit in which the applicant will have the opportunity to prove that he was an insurable risk at the time of the application. And if a plaintiff does not succeed in proving that the insurance company acted in bad faith, then the insurance company’s determination of non-insurability “is conclusive of the company’s nonliability.” Slayton, 429 S.W.2d at 370. We disagree.
 Our examination of Kentucky law has revealed no authority that would justify abandonment of the well-established principle of Kentucky contract law that a party to a contract here, the defendant-insurer, may not rely on the nonoccurrence of a condition precedent here, the applicant’s medical insurability, which the company itself prevented from occurring. Slayton teaches that the conditional receipt created a contract of insurance, subject to Southern Farm’s good faith determination of insurability with respect to the plan applied for. Id. In Kentucky, an insurance company’s failure to determine, in good faith, an applicant’s insurability before rejecting coverage deprives it of any benefit it might obtain from that condition. So long as the plaintiffs produced sufficient evidence to convince a reasonable jury that the defendant rejected Riddle’s application in bad faith, the fact that Southern Farm might have found Riddle uninsurable had they acted in good faith is not relevant under Kentucky law.
B.
The defendant argues, in the alternative, that the judgment of the district court must be reversed because the plaintiffs failed to produce any evidence that the company reviewed Riddle’s file in bad faith. The defendant argues that it “obviously” did not review the application in bad faith, and there was insufficient evidence of bad faith “to warrant submitting the case to a jury.” The defendant concludes that reversal is appropriate because “[t]he Plaintiffs’ case [wa]s insufficient as a matter of law.”
The defendant is apparently challenging the district court’s denial of its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), made at the close of all evidence. We review a district court’s denial of a *408 motion for judgment as a matter of law de novo. Bowman v. Corr. Corp. of Am., 350 F.3d 537, 544 (6th Cir.2003). A federal court exercising its diversity jurisdiction applies the law of the state whose substantive law governs the action to determine whether to grant or deny a motion for judgment as a matter of law based on insufficiency of the evidence. See Morales v. Am. Honda Motor Co., 151 F.3d 500, 506 (6th Cir.1998).
Under Kentucky law, a motion for a directed verdict — the same thing as a motion for judgment as a matter of law under Rule [50(a) ] — should be granted only if “there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable minds could differ.” Washington v. Goodman, 830 S.W.2d 398, 400 (Ky.App.1992). In deciding such a question, “every favorable inference which may reasonably be drawn from the evidence should be accorded the party against whom the motion is made.” Baylis v. Lourdes Hosp., Inc., 805 S.W.2d 122,125 (Ky.1991).
Adam v. J.B. Hunt Transp., Inc., 130 F.3d 219, 231 (6th Cir.1997).
The issue of the defendant’s bad faith turns largely on the inferences to be drawn from the evidence regarding the defendant’s motive in closely scrutinizing Riddle’s application. Once the defendant learned that Riddle was deceased, the company’s Regional Underwriting Manager, Bobbie Jo Myers, took over the file from Jeff Lewis, the underwriting consultant initially assigned to Riddle’s application. The file was subsequently reviewed by Myers, Chief Underwriter Danny Collins, and Vice President of Underwriting Denny Blaylock. The defendant claims that it was merely adhering to company policy in following this procedure, but could not produce any documentation to substantiate its claim.
As Riddle’s file proceeded up the chain of scrutinizers, the number of medical concerns noted by each reviewer increased. Virtually every reference to a medical condition in the records, no matter how serious, was cited by the reviewers as a basis for denying coverage, even when there was no supporting clinical evidence for those conditions, and sometimes in the face of contrary clinical findings. Both Myers and Collins cited rheumatoid arthritis as a concern despite a blood test that returned negative for that condition. All three reviewers seized upon a reference to alcohol abuse in a 1996 letter from Dr. Yusuf Deshmukh, a reference which Myers acknowledged to be “vague,” despite the absence of any mention of alcohol abuse in the medical records from Dr. Phil Aaron, Riddle’s treating physician. Notably, the very first “medical” concern listed by Collins was the fact that Riddle had paid only one month’s premium before he died.
Blaylock made the ultimate decision to deny coverage. At trial, Blaylock testified that he did not review Riddle’s application any more closely because Riddle had died, but was then impeached by his deposition testimony in which he admitted the application was scrutinized more closely than in the average case. At one point, he acknowledged that he went through Riddle’s file with a “fine-tooth comb.” We agree with the district court that the defendant’s heightened degree of “scrutiny might raise an inference that the Defendant sought to be as thorough and fair as possible. It might just as easily, however, raise an inference that the company was looking for reasons to deny coverage. Choosing between two reasonable inferences is the function of the jury.” Similarly, the defendant’s initiation of a more intense investigation of Riddle’s medical history immedi *409 ately after learning of his death might be explained by equally plausible motives. The defendant received Riddle’s medical records from Dr. Aaron the same day the company learned of his death. The fact that more medical records were requested the very next day might be explained by the defendant’s concern over previously unknown health problems mentioned in those records. On the other hand, the investigation might also raise the inference that the defendant was attempting to procure some colorable medical reason to deny coverage.
The plaintiffs, as the nonmoving party, are entitled to every reasonable inference in reviewing a motion for judgment as a matter of law. Baylis, 805 S.W.2d at 125. We do not deny that the medical evidence tends to show that Riddle was seriously ill and perhaps uninsurable under certain standards. Under Kentucky law, however, it is irrelevant whether the defendant could have denied Riddle’s application in good faith if the evidence shows that the defendant, in fact, reviewed the application in bad faith. We have reviewed the evidence, and we have considered the reasonable inferences to be drawn from that evidence, and we cannot say that reasonable minds could not differ as to whether the defendant acted in bad faith. Accordingly, the district court did not err in denying the defendant’s motion for judgment as a matter of law and submitting the issue to the jury.
C.
On cross-appeal, the plaintiffs ask this court to “find as a matter of law that in diversity cases, ... [the] post-judgment interest rate is established by the state law, which in this case would be 12% per annum.” The district court applied 28 U.S.C. § 1961 and held that post-judgment interest must be determined at the federal rate of interest. We review questions of law de novo. Voinovich, 130 F.3d at 192.
Section 1961(a) provides, in pertinent part:
Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding, the date of the judgment.
28 U.S.C. § 1961 (West Supp.2004) (footnote omitted).
“In diversity cases in this Circuit, federal law controls postjudgment interest but state law governs awards of prejudgment interest.” F.D.I.C. v. First Heights Bank, FSB, 229 F.3d 528, 542 (6th Cir.2000) (citing Clissold v. St. Louis-San Francisco Rwy. Co., 600 F.2d 35, 39 n. 3 (6th Cir.1979)); see also Weitz Co. v. Mo-Kan Carpet, Inc., 723 F.2d 1382, 1386 (8th Cir.1983). Applying the unambiguous language of the statute and the cited caselaw, it is evident that the district court did not err in applying the federal rate of interest.
D.
1.
Finally, the plaintiffs argue that the district court erred in refusing to allow them to pursue their claim for punitive damages. The district court reasoned that the only issue presented in this case was whether a valid contract of insurance existed, not whether there was a bad faith failure to pay claims clearly due and payable. Consequently, the court held that punitive damages were not available under Kentucky law. The plaintiffs counter that under Kentucky law, “it [is] clear *410 that an insured may recover in tort where an insurance company acts in bad faith in dealing with the insured and may recover consequential and punitive damages.” We review questions of law de novo. Voinovich, 130 F.3d at 192.
Kentucky law provides: “In no case shall punitive damages be awarded for breach of contract.” Ky.Rev.Stat. Ann. § 411.184(4). Nevertheless, the Kentucky Supreme Court has “recognize[d] a cause of action to recover tort damages against insurance companies upon proof of bad faith failure to pay claims clearly due and payable.” Wittmer v. Jones, 864 S.W.2d 885, 886 (Ky.1993). Thus, where a breach of contract is accompanied by tortious conduct, that is, “when an insurance company acts in bad faith in dealing with its own insured,” punitive damages may be awarded. Curry v. Fireman’s Fund Ins. Co., 784 S.W.2d 176, 178 (Ky.1989).
The parties dispute whether a valid contract of insurance existed between Southern Farm and Riddle. Southern Farm believed that no contract existed because of the failure of a condition precedent. The plaintiffs argued that a valid contract existed because the defendant’s tortious bad faith denial of Riddle’s application foreclosed the defendant from relying upon the nonoccurrence of the condition precedent. The district court concluded that the parties’ dispute over insurance contract formation did not amount to a dispute over coverage, and thus, did not constitute a bad faith failure to pay a claim giving rise to punitive damages.
We do not agree that the sole issue in this case was whether any contract of insurance came into existence. The plaintiffs claimed not only that a valid contract existed, but also that, pursuant to the terms of that contract, they were entitled to the full value of the insurance policy once Riddle became deceased. As such, both contract formation and Southern Farm’s alleged bad faith refusal to pay a valid claim were issues for jury determination. That being so, the jurors should have been instructed that, under Kentucky law, they were free to consider punitive damages if they first found the defendant had deliberately rejected the plaintiffs’ claim in bad faith.
We think the district court erred in denying the plaintiffs’ request for an instruction on the availability of punitive damages and the plaintiffs are entitled to a new trial solely on that issue.
III.
For the foregoing reasons, the district court’s judgment holding the defendant liable to the plaintiffs in the amount of $200,-000 — the face amount of the policy — is AFFIRMED, but the judgment, as entered, is VACATED and the case is REMANDED for a new trial on the question of punitive damages only.