NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0132n.06

**No. 20-3470**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| In re: JOAO TEIXEIRA, | ) | **FILED** |
| Debtor. | ) ) ) | Mar 15, 2021 DEBORAH S. HUNT, Clerk |
| JOAO TEIXEIRA, | ) ) | |
| Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
| ANDREW R. VARA, United States Trustee for Region 9; DAVID O. SIMON, Chapter 7 Trustee, | ) ) ) | |
| Appellees. | ) ) | |

**BEFORE: SILER, WHITE, and STRANCH, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Joao Teixeira appeals the district court's order dismissing, for lack of prudential standing, his appeal of the bankruptcy court's order denying his second motion to vacate an order authorizing the sale of his interest in an art trust. We AFFIRM.

**I.**

On September 6, 2017, Teixeira filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. He listed assets between $0 and $50,000, and liabilities of $100,001-$500,000. He scheduled $52,918.90 in credit-card and other unsecured debts, and a $100,441 student loan. In his petition, Teixeira denied having an interest in any "[t]rusts, equitable or future interests in property . . . and rights or powers exercisable for [his] benefit"; having any interest in any "[c]laims against third parties, whether or not [he had] filed a lawsuit or made a demand for

payment"; or being "a party in any lawsuit, court action, or administrative proceeding" "[w]ithin 1 year before [he] filed for bankruptcy." Bankr. R. 1 at 13, 35. David O. Simon was appointed as Chapter 7 Trustee.

Soon after, the United States Trustee, a Department of Justice official who supervises the administration of bankruptcy cases, sent Simon information regarding Teixeira's potential interest in an art trust (Caravaggio Trust). The corpus of the trust is a painting—purportedly a sixteenth-century painting by Renaissance master Michelangelo Merisi da Caravaggio. The Caravaggio Trust had been the subject of litigation since 2001 in Volusia County, Florida. Teixeira had also been involved in litigation with Martin Boire, the Caravaggio Trust Trustee, for nearly a decade.

At the meeting of creditors pursuant to 11 U.S.C. § 341, Simon asked Teixeira about the Caravaggio Trust. Teixeira testified in relevant part as follows:

Q: What do you know about some litigation pending in Florida dealing with something called the Caravaggio Trust?

A: I have an attorney down there --

Q: Yeah.

A: -- dealing with that.

Q: Yeah.

A: Basically what happened with that was an incredible case of a property that belonged to my dad.

Q: Yeah.

A: And the attorney that was the Trustee --

Q: Now, what's your dad's name?

A: Joao, the same as mine.

Q: Okay.

A: And basically [Boire] ended up suing that property.

Q: Mm-hmm.

A: And he took it, so it's his.

Q: Well, are you in the lawsuit or is it your dad that's in the lawsuit?

A: My dad is in the lawsuit.

Q: Yeah.

A: And I'm in the lawsuit.

Q: And you're in the lawsuit too? And you're represented by an attorney by the name of Cesar Dominguez.

A: Yep.

Q: Okay.

A: That property basically --

Q: And what's Dominguez trying to do for you?

A: Dominguez as of right now, I had to hire him in order to see what's going to happen, because [Boire] ended up suing the Trust, sold the property and took all the money for himself. So we had to end up getting some kind of representation. As of right now the Courts in Volusia County have said that it belongs to [Boire], but the attorney that we got is still litigating it. But as far as we know, he took all the money and the Court hasn't said anything other than it's all his.

Q: And why didn't you tell your [bankruptcy] lawyer about all this?

A: Because I've never had any -- any even wanting on that, because as far as I know there's nothing there.

Q: I mean, they're talking about big numbers like $14 million, $300,000, $9,106,000, and you have no idea what this is all about?

A: Like I said, [Boire] took all of that.

Q: Okay.

A: There's nothing for me in there, other than my name stuck on that thing.

Q: Well --

A: I hate that I even got involved. It belonged to my dad and my dad doesn't speak English and he got me involved with that, and that's why my name is really attached to that.

Q: So are you saying you didn't have claims to this property?

A: Oh, as far as my name is in there, my father said I could have 25 percent if I help him out, but there's really nothing I can do. [Boire] took everything.

Bankr. R. 52-2 at 9-11.

Teixeira received a discharge in December 2017, and Simon filed a report of no distribution, meaning that the bankruptcy estate contained no assets to liquidate for Teixeira's creditors' benefit over and above that exempted by law. Teixeira's bankruptcy case was then closed.

Two months later, Simon received a phone call from Boire's attorney about whether Simon would be willing to sell Teixeira's interest in the Caravaggio Trust. Simon then wrote to Boire and expressed his interest in "finding a buyer for whatever interest [Teixeira] really owns." R. 7-1, PID 130.

Several weeks later, a Florida limited liability company, TAMSEF I, LLC (TAMSEF),[1] contacted Simon and offered $10,000 for Teixeira's interest in the Caravaggio Trust. Simon then moved to reopen Teixeira's bankruptcy case and filed a notice of intent to sell Teixeira's interest in the Caravaggio Trust to TAMSEF for $10,000. No creditors objected to the proposed sale. However, Teixeira objected, arguing, in contradiction to his prior testimony, that the proposed sale was unreasonable because his interest is worth far more than $10,000. In support, he explained that the painting was sold in 2012 for over $15 million. The buyers defaulted, however, resulting in a default judgment in favor of the Caravaggio Trust for over $18 million. In his objection, Teixeira also explained that he was not promised an interest by his father; rather, he had purchased his 25% interest from a bank in 2009. He also stated that his interest was encumbered by a $753,825.23 default judgment entered against the bank in 2001.

At the hearing, Simon explained that although he was aware of a potential interest in the Caravaggio Trust, based on Teixeira's testimony that the interest was worthless, and because Simon's research also showed that there were "issues over the ownership of the interest in the trust, . . . issues over the ownership of this painting, and . . . issues over whether or not the painting is authentic," Simon decided to file a no-asset report. *Id.* at PID 228-29. But now that Simon had received a meaningful offer for $10,000, he had no reason not to sell Teixeira's interest.

---

[1] TAMSEF is a supporting organization of the Ave Maria Society, a Florida non-profit that supports various Catholic charities. The Ave Maria Society Endowment Fund is the sole member of TAMSEF.

Teixeira's attorney, Anna Wall, argued that the painting's sale in 2012 for over $15 million showed that Teixeira's interest was worth significantly more than $10,000. The bankruptcy court rejected that argument:

> THE COURT: Right, but the Debtor hasn't -- the Debtor's only recovery would be if there was enough money to pay everybody in full and then get something. And if you're in a position to help find someone that is willing to pay I don't know what -- I mean, if you said, you know, there's somebody that's willing to pay $100,000, I think Mr. Simon's ears would p[r]ick up and he would probably say tell me who it is and I'll call them.
>
> But absent, you know, some[one] that's going to pay 100 percent and then some to all creditors, it's really -- I don't see the Debtor has a -- I guess the technical term would be standing to say yea or nay. So, you know, if you have -- the order will -- at this point I assume you don't have anyone that's interested in paying significantly more?
>
> MS. WALL: Not significantly more. I have been in talks with my client about possibly him purchasing that interest for more than what the other party is offering.
>
> THE COURT: But one of the issues there is where is that money coming from, because if it's the Debtor offering to pay, then the question is where is this -- why is that not also an asset of the Debtor that's --
>
> MS. WALL: Well, it would be from family and the other beneficiaries in the trust.
>
> THE COURT: Again, this -- unless somebody is offering significantly more -- you know, it's those other people that would come up and say, you know, Judge, we want to pay more, and if we get -- I think we may have another matter -- but if there's a bidding dispute, you know -- not to say bidding dispute, but if there are multiple parties interested in purchasing, then they're free to ask the Court and I don't see them here.
>
> So the thought that there might be people, that's not enough for me to say no. And if there was something -- if someone came in and said, Judge, you know, give me a week and I can get, you know, people to pay 20, 40, $50,000 for this, I think Mr. Simon would probably say, you know, we can -- he doesn't want to lose the 10,000 that he's got a deal for, but that's a different situation.
>
> So I think at this point I'm going to grant the -- or approve the Notice of Intent to Sell and overrule the objection.

*Id.* at PID 232-34. Teixeira did not appeal the bankruptcy court's approval of the sale, and the sale was completed on July 7, 2018.

On September 11, 2018, Teixeira filed a motion to vacate the sale order under Federal Rule of Civil Procedure 60(b). *See* Fed. R. Bankr. P. 9024. Teixeira argued that the sale was invalid

because TAMSEF was not a good-faith purchaser, that newly discovered evidence showed that Simon colluded with Boire and TAMSEF and committed fraud on the court, and that the sale price was grossly inadequate. At the hearing on the motion to vacate, Simon and Teixeira agreed that Teixeira would have twenty-one days to have someone tender $100,000 to Simon as a bid on Teixeira's interest in the Caravaggio Trust. If such funds were transmitted, the order approving sale would be vacated and Simon would re-offer the 25% interest for sale at auction, with the $100,000 bid being the opening bid. If the funds were not tendered, Teixeira consented to the denial of his motion. At the hearing on November 7, 2018, only Simon appeared and informed the court that nobody had tendered the $100,000. The bankruptcy court, accordingly, denied Teixeira's motion to vacate. Teixeira did not appeal.

On February 1, 2019, Teixeira filed his second motion to vacate the sale order, which is the subject of this appeal. He argued that newly discovered evidence[2] showed that Simon, Boire, and TAMSEF colluded to effectuate a bad-faith sale of Teixeira's personal property. Simon, the U.S. Trustee, Boire, and TAMSEF objected, arguing that TAMSEF was a good-faith purchaser and that their communications with each other were routine.

Meanwhile, because of Teixeira's inconsistent positions about his interest in the Caravaggio Trust, the U.S. Trustee filed an adversary complaint seeking to revoke Teixeira's discharge because it was obtained through fraud. On March 6, 2019, Teixeira stipulated to revocation and denial of his discharge without admitting the allegations of fraud.

---

[2] The evidence consists of accounting statements, trust disclosures, and billing statements from Boire and his attorney which generally showed that Simon, Boire, Boire's attorney, and TAMSEF communicated regarding reopening Teixeira's bankruptcy case, preparing the notice of intent to sell Teixeira's interest in the Caravaggio Trust, objecting to the admission of Teixeira's Florida attorney to represent him in the bankruptcy proceedings, and preparing the assignment documents.

On April 5, 2019, the Bankruptcy Court issued a Memorandum Opinion & Order denying

Teixeira's Second Motion to Vacate. The bankruptcy court explained:

> The Court rejects the debtor's assertion that these various communications would have produced a different result had they been presented to the Court before it approved the Chapter 7 trustee's proposed sale on June 21, 2018. The record reflects that the Chapter 7 trustee did nothing to prevent others from submitting competing bids to the $10,000 offer from TAMSEF I, LLC. The debtor and parties connected with the debtor were free to appear at the June 19, 2018, hearing with a better cash offer. But no one did. Nor did anyone appear at the June 19, 2018, hearing and ask for more time to submit a larger offer. Instead, the debtor's attorney simply argued that the debtor's interest was much more valuable than the $10,000 being offered, and indicated that there was the possibility of the debtor paying more than what was being offered, but not significantly more.

> Nor is there anything surprising or untoward about the Chapter 7 trustee communicating with individuals connected with the Florida litigation about buying the debtor's interest in the Caravaggio Trust. This is not a situation where anyone could bid on a twenty-five percent interest in a painting that might be a Caravaggio. Rather, any purchaser would only be buying whatever interest the debtor has in a trust that remains tied up in almost two decades of litigation with purported liens in the millions of dollars. Presumably, only parties already entangled in that litigation would be seriously interested in purchasing whatever interest the debtor may have in the Caravaggio Trust.

> The Chapter 7 trustee receives a commission based on the amount of money paid to creditors, *see* 11 U.S.C. § 326, and has a direct financial incentive to maximize the amount of money he can obtain from the sale of the debtor's assets. Indeed, the Chapter 7 trustee demonstrated his willingness to having the Court vacate the completed sale to TAMSEF I, LLC at the hearing on October 16, 2018.

> At the hearing on October 16, 2018, the Court asked attorney Dominguez whether he was aware of any buyers who might be willing to present higher offers for the debtor's interest. Attorney Dominguez stated that he could easily find a buyer who would be willing to offer "$100,000 . . . $50,000." Attorney Dominguez then expressed the debtor's desire to schedule an auction for the debtor's interest, with his new buyer's offer as the opening bid. The Chapter 7 trustee also stated that he would "love the opportunity to sell the debtor's interest for more money." The Chapter 7 trustee then requested a brief adjournment. After the brief adjournment, the Chapter 7 trustee reported that he had reached an agreement with attorney Dominguez. If, as attorney Dominguez represented, someone could come up with $100,000 in three weeks, then the Chapter 7 trustee would ask the Court to vacate the earlier sale. The $100,000 would then be used as an opening bid for an auction. If the $100,000 was not tendered by November 6, 2018, then the first motion to vacate would be denied.

> Accordingly, the Court rejects the debtor's contention that this newly discovered evidence provides sufficient grounds to set aside the sale of the debtor's interest in

the Caravaggio Trust under Bankruptcy Rule 9024 and Rule 60(b)(2) of the Federal Rules of Civil Procedure. Nor does the Court find it necessary to address any other reasons for denying the second motion to vacate, such as mootness under § 363(m). To the extent that a reviewing court were to find this Court's own reasoning deficient, the reviewing court would remain free to "affirm on any grounds supported by the record." See *Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*, 906 F.3d 403, 408 (6th Cir. 2018).

R. 7-1, PID 1888-90.

Teixeira appealed the order to the district court, arguing that the bankruptcy court made clearly erroneous findings of fact. In response, Simon argued in part that Teixeira did not have standing to appeal because he was not a "person aggrieved" by the sale order. According to Simon, Teixeira had not shown that he would benefit from the vacatur of the sale order because he had not presented evidence that a successful appeal would cause assets to exceed liabilities.

The district court agreed with Simon and held that Teixeira lacked prudential standing to appeal the bankruptcy court's order denying his second motion to vacate. Teixeira now appeals.

**II.**

The district court concluded that Teixeira lacked prudential standing because he was not a "person aggrieved" by the bankruptcy court's sale order. On appeal, Teixeira argues that the district court's holding was incorrect, but he does not challenge whether the person-aggrieved standard for appellate bankruptcy jurisdiction still applies in light of recent decisions from the Supreme Court and this court. Under the person-aggrieved standard, Teixeira must show that he is "directly and adversely affected pecuniarily by the order." *Harker v. Troutman* (*In re Troutman Enters., Inc.*), 286 F.3d 359, 364 (6th Cir. 2002) (quoting *Fidelity Bank, Nat'l Ass'n, v. M.M. Grp., Inc.*, 77 F.3d 880, 882 (6th Cir. 1996)). However, we recently cast doubt on whether that standard still applies in light of the Supreme Court's decision in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), which made clear that courts may not rely purely on prudential grounds to decline to adjudicate cases. *See Carl F. Schier PLC v. Nathan* (*In re*

*Capital Contracting Co.*), 924 F.3d 890, 895-97 (6th Cir. 2019). Although we noted that some courts had justified the person-aggrieved test on prudential grounds, we did not decide *Lexmark*'s effect on the person-aggrieved test in bankruptcy appeals because we determined that the appellant lacked Article III standing. *Id.* at 896-98. We follow the same path here.

For Article III standing, Teixeira must establish an injury in fact fairly traceable to the challenged conduct that will likely be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). In making this determination, we review factual findings for clear error and legal conclusions de novo. *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231, 238 (6th Cir. 2009); *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005).

> "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560, 112 S. Ct. 2130). A particularized injury affects the party in a specific way (in contrast to a generalized grievance), and a concrete injury affects the party in a real way (in contrast to an abstract grievance). *Id.* at 1548–49. On appeal, moreover, "the focus shifts to injury caused by the judgment rather than injury caused by the underlying facts." 15A Charles Alan Wright et al., *Federal Practice and Procedure* § 3902 (2d ed.), Westlaw (database updated Apr. 2019); *see ASARCO Inc. v. Kadish*, 490 U.S. 605, 617–18, 109 S. Ct. 2037, 104 L.Ed.2d 696 (1989).

*In re Capital Contracting Co.*, 924 F.3d at 897. A threatened injury must be "certainly impending to constitute injury in fact," and "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks, citations, and alterations omitted). Similarly, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Doe v. DeWine*, 910 F.3d 842, 850 (6th Cir. 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 181 (2000)). Further, standing may not be "manufacture[d]" by the party seeking relief. *Clapper*, 568 U.S. at 416; *see also Ctr. for Powell Crossing, LLC v. Ebersole*, 696 F. App'x 702, 705 (6th Cir. 2017). And courts are

"reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper*, 568 U.S. at 414.

Teixeira primarily argues that he is financially harmed by the sale order and the denial of his second motion to vacate. The district court reasoned that Teixeira lacked standing to appeal the bankruptcy court's order denying his second motion to vacate because Teixeira did not establish that vacating the sale order could result in a surplus to the bankruptcy estate, i.e., that the 25% interest in the Caravaggio Trust could be resold at a price that would cause assets to exceed liabilities. We see no clear error in the district court's factual finding. As the bankruptcy court and district court reasoned, Teixeira presented insufficient evidence to support that argument because no alternative bidder had materialized, there was uncertainty around the value of the Caravaggio Trust given the decades-long litigation, and there were adverse claims against Teixeira's interest that were unclear in nature because Teixeira himself had been inconsistent in describing and quantifying these adverse interests.

Although Teixeira generally argued to the district court, and reiterates on appeal, that his interest was worth substantially more than $10,000 because the Caravaggio Trust obtained a default judgment against previous purchasers of the painting for over $18 million, the district court appropriately rejected that argument as speculative because Teixeira presented no evidence that the Caravaggio Trust would ever recover any of that judgment. Further, as the bankruptcy court and the district court found, Teixeira was offered several opportunities to come up with a better offer for his interest in the trust, but failed to do so. At the initial hearing on Teixeira's objection to the notice of sale, Teixeira offered only a statement from his attorney that some of Teixeira's family members might be able to offer more than $10,000, but "[n]ot significantly more." R. 7-1, PID 233. The bankruptcy court noted, however, that no buyers were there to make such an offer.

At the hearing on his first motion to vacate, Teixeira consented to the denial of his motion if no offer of at least $100,000 was tendered to Simon for the 25% interest, and Simon agreed to vacate the sale order if anyone tendered such an offer. No offer materialized. Thus, Teixeira failed to establish that he was injured by the sale or that any injury would be redressed through a favorable decision.

On appeal, Teixeira highlights that because his discharge was revoked and he remains liable for his debts, the sale order only diminished his liabilities by $10,000; selling the interest for anything above that would further offset his liabilities and therefore benefit him. There are a few problems with this argument. First, he did not raise it below. And "[a]rguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019) (citing cases from the Eighth, Tenth, and D.C. Circuits). Second, although the U.S. Trustee alleged that revocation of Teixeira's discharge was warranted due to Teixeira's fraud in attempting to conceal and then misrepresenting the value of the 25% interest, Teixeira argues that he never admitted fraud and instead voluntarily stipulated to the discharge revocation "in order to persuade the Bankruptcy Court [to] grant his second motion" to vacate the sale order. Appellant's Br. at 19-20. That phrasing suggests that Teixeira stipulated to the discharge revocation to manufacture standing, which is impermissible. *Clapper*, 568 U.S. at 416. Even without these issues, however, Teixeira has still not shown that he was actually injured by the sale—or the bankruptcy court's denial of his second motion to vacate the sale order—or that his injury is likely to be redressed by reversal, all for the same reasons discussed above: he presented nothing more than speculation that his 25% interest could be sold for more than $10,000, despite the fact that he was given multiple opportunities to come up with a better offer.

While this appeal was pending, the Florida state court issued an order confirming that title to the Caravaggio painting has revested in the Caravaggio Trust. Teixeira argues in his reply brief that the Florida court order is significant because it shows that the judgment debtors and intervenors no longer have an interest in the painting "that has clouded the title of the Painting for the last eight years," and as a result "the Caravaggio Trust Beneficiaries are in an excellent position to produce a Buyer during the pendency of the present appeal." Reply to U.S. Trustee at 12. However, no buyer appears to have materialized to date. In any event, Teixeira never offered any additional facts or evidence that would push this argument beyond mere conjecture. Without more, his conclusory, speculative argument that a successful appeal would allow Simon to sell Teixeira's interest at a higher price is insufficient to provide a basis for standing under Article III. Further, allowing a debtor to challenge a sale order based on subsequent events that impact the value of the asset sold would create serious finality concerns and lead to protracted litigation given that the value of assets often changes, sometimes dramatically, with the passage of time.

Teixeira's remaining arguments in favor of standing lack merit. Teixeira argues that he is harmed because the bankruptcy court's order affects the terms of his discharge in bankruptcy. Teixeira, however, voluntarily consented to the revocation of his discharge after the U.S. Trustee alleged that Teixeira obtained the discharge through fraud and moved to revoke the discharge on that basis. As the U.S. Trustee points out, "the revocation of his discharge in the face of the United States Trustee's adversary complaint was the resolution of a separate and distinct issue litigated in a separate proceeding and untethered to the motion to vacate the sale order itself." U.S. Trustee's Br. at 24.

Finally, Teixeira argues that the order appealed impairs his rights because it prevents him from showing "that TAMSEF was not a good faith purchaser" or "that [Simon, Boire], and

TAMSEF colluded and committed fraud on the court to effectuate their bad-faith sale of Teixeira's 25% beneficial interest to TAMSEF for the paltry sum of $10,000.00." Appellant's Br. at 28. Teixeira cites no authority for this argument, and it is inconsistent with our caselaw. *See In re Capital Contracting*, 924 F.3d at 898 (rejecting the appellant's argument that it has standing to vindicate the rule of law).

Accordingly, Teixeira has not established that he has Article III standing.

**III.**

For the reasons set out above, we AFFIRM the district court's judgment.